UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN MARY ASALONE IULA,<br><br>                             Plaintiff,<br><br>v.<br><br>JAMES VOOS,<br><br>                            Defendant. | Case No.: 23-CV-2277 JLS (AHG)<br><br>**ORDER: (1) DISMISSING AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) WITH LEAVE TO AMEND; AND (2) DENYING PLAINTIFF'S RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF Nos. 5, 6). |

Presently before the Court are Plaintiff Karen Mary Asalone Iula's Amended Complaint for Monetary, Declaratory, and Injunctive Relief ("Am. Compl.," ECF No. 5) and Renewed *Ex Parte* Application for Temporary Restraining Order and Motion for Preliminary Injunction ("Renewed TRO Mot.," ECF No. 6). Having carefully considered Plaintiff's submissions and the law, the Court **DISMISSES** Plaintiff's Amended Complaint and **DENIES** her Renewed TRO Motion.

## BACKGROUND

Plaintiff initiated this action by filing her original Complaint ("Compl.," ECF No. 1) on December 14, 2023. She also moved for leave to proceed *in forma pauperis* ("IFP") the same day. *See* ECF No. 2. Then, on December 15, Plaintiff filed her initial *Ex Parte*

Application for Temporary Restraining Order and Motion for Preliminary Injunction ("First TRO Mot.," ECF No. 3).

The original Complaint alleged that, after Plaintiff and her children moved into Defendant James Voos' rental home pursuant to a sublease agreement, Defendant began "demanding sexual favors" from Plaintiff "in exchange for housing and associated benefits." Compl. at 1, 4, 6. The Complaint further alleged that Plaintiff had "endured a relentless series of harassment and discrimination" at Defendant's hands, *id.* at 1; that said harassment had "rendered [Plaintiff's] living conditions unbearable," *id.* at 3; and that when Plaintiff refused Defendant's sexual demands, he "retaliat[ed]" by "unlawfully evicting" Plaintiff, *id.* at 1–2. The Complaint listed four causes of action: (1) quid pro quo harassment in violation of 42 U.S.C. § 3604, *id.* at 3–4; (2) "interference and intimidation in violation of 42 U.S.C. § 3617," *id.* at 5; (3) "unlawful eviction and retaliation" in violation of the "provisions of the Fair Housing Act" ("FHA"), *id.* at 6; and (4) intentional infliction of emotional distress ("IIED"), *see id.* at 7–8.

In its December 21, 2023 Order (the "Order," ECF No. 4), the Court granted Plaintiff leave to proceed IFP and screened the Complaint as required by 28 U.S.C. § 1915(e)(2). *See* Order at 2–3. The Court explained that, to avoid dismissal, the Complaint needed to contain allegations of fact from which the Court could reasonably infer Defendant's liability. *See id.* at 3–4. And while the FHA provided for Plaintiff's first three causes of action, the Court found the Complaint devoid of factual allegations to support them. *See id.* at 5–8. The Complaint neither alleged facts regarding the timing, frequency, or circumstances of Defendant's conduct, nor provided details about any specific act of harassment. Instead, the Complaint contained only legal conclusions, like that Defendant "engaged in sexual harassment, intimidation, and coercion." *Id.* at 6 (quoting Compl. at 4). As Plaintiff's IIED claim was equally unsupported, the Court dismissed the Complaint for failing to state a claim for which relief could be granted.

Plaintiff's First TRO Motion, which the Court interpreted to request the enjoinment of a state eviction proceeding, was no more successful. The Court determined that it was

precluded from granting Plaintiff's request by the Anti-Injunction Act ("AIA"), under which federal courts "may not grant an injunction to stay proceedings in a State court" unless certain narrow exceptions apply. *See id.* at 9–10 (quoting 28 U.S.C. § 2283). And to the extent Plaintiff sought to prevent Defendant from committing further harassment, the Court found that Plaintiff had not shown any likelihood of succeeding on the merits because her Complaint did not state a claim. *See id.* at 10. Accordingly, the Court denied the First TRO Motion. *Id.* at 11.

The dismissal of Plaintiff's original Complaint and denial of Plaintiff's First TRO Motion were both without prejudice. *See id.* The Court granted Plaintiff forty-five days to file an amended complaint. *Id.* Plaintiff's Amended Complaint and Renewed TRO Motion followed.

## SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

As Plaintiff continues to proceed IFP, her Amended Complaint remains subject to *sua sponte* dismissal if it is "frivolous, [is] malicious, fail[s] to state a claim upon which relief may be granted, or seek[s] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."). For the reasons below, the Court finds that Plaintiff has again failed to state a claim for which relief can be granted. The Court thus **DISMISSES** Plaintiff's Amended Complaint without prejudice and with leave to amend.

### I.   Standard of Review

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires a plaintiff to plead facts supporting a claim for relief rather than make conclusory allegations or present a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

"[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Further, courts have a duty to construe a pro se litigant's pleadings liberally. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). A district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect." *Lopez*, 203 F.3d at 1130 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)).

**II.  Analysis**

The Amended Complaint lists three causes of action. First, Plaintiff brings a federal claim for "a violation of the [FHA], 42 U.S.C. § 3604." Am. Compl. at 3. The Amended Complaint also contains state law IIED and negligence claims. *Id.* at 3–4. The Court will first summarize Plaintiff's present allegations and then analyze each of Plaintiff's causes of action in turn.

*A.  Allegations in the Amended Complaint*

Plaintiff alleges that after she moved into Defendant's property, "Defendant immediately began exhibiting unwelcome sexual advances towards [her], creating a hostile living environment." *Id.* at 2. Plaintiff further claims that she consistently rejected Defendant's advances, and that he "retaliated by manipulating living conditions and threatening eviction." *Id.* The alleged harassment intensified to the point where Plaintiff's living situation became "untenable." *Id.* Defendant then filed an unlawful detainer action against Plaintiff in February of 2023, eventually receiving a favorable judgment on December 15. *Id.* at 3. Plaintiff states that, as a result of Defendant's actions, she suffers

from "emotional and psychological distress" and "fac[es] imminent removal from the property by the sheriff." *Id.* at 2.

### B. Federal Claims

The Court liberally construes the Amended Complaint's federal cause of action to include the three FHA-related claims—quid pro quo harassment, hostile housing environment, and retaliatory eviction—Plaintiff brought in her initial Complaint. However, the Amended Complaint's allegations fail to support any of those claims.

#### 1. Quid Pro Quo Harassment

As the Court previously explained, courts "apply Title VII discrimination analysis in examining [FHA] discrimination claims." *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997). So, to state a quid pro quo harassment claim, the Amended Complaint must "include facts raising an inference that the receipt of [housing] benefit[s] was conditioned upon sexual consideration." *See Christie v. Reno Flying Serv., Inc.*, No. 3:21-CV-0368-RCJ-CSD, 2022 WL 1462661, at *3 (D. Nev. May 9, 2022). A plaintiff can raise such an inference by pleading that a tangible housing action resulted from her refusal to submit to a defendant's sexual demands. *See Quigley v. Winter*, 598 F.3d 938, 947 (8th Cir. 2010). Further, quid pro quo threats can be explicit or implicit. *See Honce v. Vigil*, 1 F.3d 1085, 1089 (10th Cir. 1993). To adequately plead an implicit threat, a complaint must allege facts suggesting that the defendant's words or actions could reasonably have been understood to condition the receipt housing benefits on sexual consideration. *Cf. Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1173 (9th Cir. 2003).

The Amended Complaint fails to state a quid pro quo harassment claim. Plaintiff alleges that she rejected Defendant's "unwelcome sexual advances," and that he "retaliated" by threatening eviction. Am. Compl. at 2. That allegation—like those made in her original Complaint—essentially "recit[es] . . . the elements of [Plaintiff's] cause of action," which "will not do." *Twombly*, 550 U.S. at 555. The Amended Complaint does not (1) describe a specific instance of Defendant making demands, (2) state why Plaintiff understood Defendant to be implicitly conditioning housing benefits on her acquiescence,

nor (3) allege that Defendant explicitly made a quid pro quo threat.

The Court stresses that the showing required of Plaintiff is not particularly burdensome. However, courts generally require a complaint to include *some* detail regarding the quid pro quo threat or threats made; one cannot simply allege that such a threat occurred. *Compare Glagola v. MacFann*, No. 2:22-CV-1263-NR-LPL, 2023 WL 7271340, at *3 (W.D. Pa. Nov. 3, 2023) ("The core allegation . . . is that [plaintiff's landlord] offered to waive or pay for [plaintiff's] rent in exchange for sex. . . . That is enough to state a claim for quid pro quo harassment." (citation omitted)); *Noah v. Assor*, 379 F. Supp. 3d 1284, 1290–91 (S.D. Fla. 2019) (crediting allegations that defendant responded to plaintiff's rejection by "stating that if [p]laintiff refused to be his girlfriend, then [p]laintiff wouldn't be allowed to renew her lease" (citation omitted)), *and West v. DJ Mortg., LLC*, 164 F. Supp. 3d 1393, 1400 (N.D. Ga. 2016) (concluding plaintiff adequately pled an implicit quid pro quo threat where she described multiple instances of defendant ignoring repair requests after plaintiff rejected his advances), *with Fedynich v. Lozano*, No. 3:20CV260, 2021 WL 710368, at *12 (E.D. Va. Feb. 23, 2021) (dismissing claim where plaintiffs failed to "state any facts" showing they "had to take [defendant's] offer or suffer a consequence to their housing rights"). The Amended Complaint lacks this required detail.

### 2. Hostile Housing Environment

Establishing a hostile housing environment requires Plaintiff to "show (1) unwelcomed (2) sexual harassment that was (3) sufficiently severe or pervasive so as to interfere with or deprive her right to use or enjoy her home." *Been v. Palais Villa, LLC*, No. SACV2101532CJCKESX, 2021 WL 8895168, at *2 (C.D. Cal. Nov. 30, 2021) (citing *Quigley*, 598 F.3d at 946–47). To determine whether harassment was sufficiently severe or pervasive, courts consider factors such as "the frequency of the [harassing] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the [victim's environment]." *Salisbury v. Hickman*, 974 F. Supp. 2d 1282, 1291 (E.D. Cal. 2013) (alterations in original) (quoting

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

The Amended Complaint fails to state a hostile housing environment claim for the same reason Plaintiff's original Complaint did. The Complaint alleged that Defendant "engaged in sexual harassment, intimidation, and coercion." Compl. at 4. Similarly, the Amended Complaint states that Defendant's behavior "create[ed] a hostile living environment" and an "untenable living situation." Am. Compl. at 2. Both allegations amount only to legal conclusions. As Plaintiff has again failed to provide details regarding any specific act of harassment or describe the frequency or severity of Defendant's conduct,[1] the Court remains unable to infer that Plaintiff experienced "severe or pervasive" harassment. *See Huddleston v. City & Cnty. of San Francisco*, No. 16-CV-01998-YGR, 2016 WL 4729175, at *4 (N.D. Cal. Sept. 12, 2016) (explaining that pleading "sexual harassment" is "conclus[ory]" where plaintiff "fail[ed] to allege any facts describing the harassment").

### 3. Retaliatory Eviction

Finally, pleading a retaliatory eviction claim requires alleging that "(1) the tenant engaged in a protected activity, (2) an adverse housing consequence causally linked to that activity, and (3) resulting damage." *West v. City & Cnty. of San Francisco*, No. 21-CV-02370-EMC, 2022 WL 1556415, at *14 (N.D. Cal. May 17, 2022) (citing *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998)). The second element, causality, can be pled by alleging (1) "circumstantial evidence of a 'pattern of antagonism' following the protected conduct," *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir.

---

[1] As in her earlier motion, Plaintiff included a "Request for Domestic Violence Restraining Order" (the "Request") that she filed in state court on January 9, 2023, with her Renewed TRO Motion. *See* Renewed TRO Mot. at 24–41. The Request provides some detail about Defendant's harassing conduct. *See id.* at 39. The Court, however, again reminds Plaintiff that, "[i]n screening under § 1915(e)(2) . . . , the Court generally may not consider materials outside the complaint and pleadings." *Gibbs v. Jens*, No. 2:20-CV-1956-KJM-DMC, 2022 WL 2067971, at *2 (E.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL 4078847 (E.D. Cal. Sept. 6, 2022). If Plaintiff is indeed basing her current lawsuit on the facts alleged in the Request, Plaintiff need only include said facts in a future amended complaint for the Court to consider them.

2005) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997)); or (2) "temporal proximity between [Plaintiff's] protected activities and [Defendant's] adverse acts," *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004).

As for the first element, there is caselaw to suggest that resisting sexual advances is a protected activity, *see Yeaman v. City of Burley*, No. 4:21-CV-00345-BLW, 2023 WL 2868575, at *9 (D. Idaho Apr. 10, 2023), but the question is not settled, *see Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1299–300 (N.D. Cal. 2020) (describing split in authority regarding whether "refusing sexual harassment is . . . a protected activity" under Title VII). In either event, courts agree that *reporting* sexual harassment is a protected activity. *See id.* at 1300. And here, Plaintiff alleges that she reported Defendant's behavior to the "local authorities," and that "Defendant's behavior" escalated following those reports. Am. Compl. at 2.

Further, Plaintiff provides some support for her retaliatory eviction claim in the Amended Complaint that was absent in her earlier filings. Specifically, she alleges that Defendant's unwelcome sexual advances began in September of 2022, that she later reported the harassment, and that Defendant began attempting to evict Plaintiff in January of 2023. *Id.* The temporal proximity between Defendant's demands, Plaintiff's report, and the unlawful detainer suit supports the inference that Defendant retaliated against Plaintiff for complaining about the alleged harassment. *See Pardi*, 389 F.3d at 850; *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding evidence of causal link where adverse employment actions "began less than three months after [plaintiff] filed his first administrative complaint").

However, Plaintiff's third FHA claim ultimately fails for the same reason as her first two: the Amended Complaint provides no details regarding the alleged harassment. To premise a retaliation claim on the protected activity of reporting sexual harassment, a plaintiff "need not establish that the underlying conduct that was the subject of [her] complaint was an actual violation of the FHA." *Cain v. Rambert*, No. 13-CV-5807 MKB, 2014 WL 2440596, at *7 (E.D.N.Y. May 30, 2014). But such a plaintiff must allege factual

circumstances supporting the inference that she "'had a good faith, reasonable belief' that she was opposing an unlawful practice," such as a quid pro quo threat or a hostile housing environment. *Id.* (quoting *Ponce v. 480 E. 21st St., LLC*, No. 12 CIV. 4828 ILG JMA, 2013 WL 4543622, at *3 n.4 (E.D.N.Y. Aug. 28, 2013)); *cf. Burke v. Soto*, No. 2:16-CV-01311-KJM-AC, 2017 WL 4811832, at *3 (E.D. Cal. Oct. 24, 2017) ("[T]o be deemed [a] 'protected activity,' the employee must subjectively and reasonably believe the facts he is reporting are true." (citing *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 967 (9th Cir. 2009))). Absent any facts describing Defendant's alleged conduct, the Court cannot infer that plaintiff reasonably believed she was opposing an unlawful practice.

### C. State Law Claims

The Amended Complaint also contains claims for IIED and negligence. Notably, the Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because the Court has dismissed all federal claims in the Amended Complaint, the Court is disinclined to exercise supplemental jurisdiction over Plaintiff's state law claims at this time. Regardless, the Court must dismiss Plaintiff's state law claims as inadequately pled.

#### 1. Intentional Infliction of Emotional Distress

Under California law, the elements of an IIED claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (citations omitted).

///

Plaintiff's IIED claim is premised on the same allegations as her FHA causes of action. Plaintiff alleges that Defendant engaged in a series of actions that "were extreme" and "outrageous," including "unwelcome and persistent sexual advances, harassment, and threats of eviction." Am. Compl. at 3. In California, "well-pled claims of sexual harassment" can constitute extreme and outrageous conduct. *Morse v. Cnty. of Merced*, No. 116CV00142DADSKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13, 2016) (citing *Christensen v. Sup. Ct.*, 820 P.2d 181, 202–03 (Cal. 1991)). But Plaintiff's claims are not well-pled because her assertions of harassment are unsupported by allegations of fact.

Consequently, the Amended Complaint does not state a claim for IIED. *See Taylor v. First Tech. Fed. Credit Union*, No. 3:15-CV-00023-HZ, 2015 WL 3464066, at *5 (D. Or. May 29, 2015) (dismissing IIED claim as plaintiff "d[id] not provide any details about the nature of" the alleged "unwelcome physical contact" or the "frequency of the alleged incidents"); *Jones v. Gen. Elec. Co.*, No. 18-CV-07086-EMC, 2019 WL 1599183, at *4 (N.D. Cal. Apr. 15, 2019) ("Mr. Jones' complaint does not detail what about Defendants' conduct was extreme or outrageous, and conclusorily [sic] asserts that he 'has suffered humiliation, embarrassment, emotional and mental anguish.' . . . Accordingly, the IIED claim is dismissed . . . ." (emphasis and citation omitted)).

### 2. *Negligence*

"In California, the 'plaintiff in a negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury.'" *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (quoting *Vasilenko v. Grace Fam. Church*, 404 P.3d 1196, 1198 (Cal. 2017)). Per the Amended Complaint, Defendant was negligent for initiating eviction proceedings and for "fail[ing] to provide a safe and harassment-free environment." Am. Compl. at 4. Those allegations do not state a negligence claim.

As an initial matter, Plaintiff's allegations focus on alleged sexual harassment, suggesting that her negligence claim is premised on said harassment. Plaintiff fails, however, "to explain how such a claim would be anything other than a common law cause

of action for sexual harassment, which does not exist" in California.[2] *Thomas v. Regents of Univ. of Cal.*, 315 Cal. Rptr. 3d 623, 651 (Ct. App. 2023). And insofar as Plaintiff relies on Defendant's obligations under the FHA or California's Fair Employment and Housing Act to supply a legal duty, her "cause of action is under [those statutes], not negligence." *Johnson v. Cnty. of Yolo*, No. 2:12-CV-00812-KJM, 2013 WL 657882, at *9 (E.D. Cal. Feb. 22, 2013); *cf. Rodriguez v. Morgan*, No. CV 09-8939-GW CWX, 2012 WL 253867, at *4 (C.D. Cal. Jan. 26, 2012) (dismissing negligence claim premised on failure to provide statutorily required accommodation as said failure was actionable under the statute). Lastly, to the extent Plaintiff claims Defendant breached a legal duty by making Plaintiff's home unsafe in other ways,[3] she provides no supporting factual allegations.

## RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiff previously sought an injunction preventing Defendant from continuing eviction proceedings in state court. *See* First TRO Mot. at 5. The Court denied that request, concluding that the AIA barred the Court from enjoining the ongoing state court action. *See* Order at 9–10. Since then, Defendant has obtained a favorable judgment—which he is seeking to enforce against Plaintiff—in his unlawful detainer suit, prompting Plaintiff's Renewed TRO Motion. *See* Renewed TRO Mot. at 1–2. For the reasons follow, Plaintiff's Renewed TRO Motion is **DENIED**.

## I. Legal Standard

Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order ("TRO"). The standard for a TRO is identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832,

---

[2] Of course, "conduct constituting sexual harassment may be alleged in common law claims such as battery and [IIED]." *Myers v. Trendwest Resorts, Inc.*, 56 Cal. Rptr. 3d 501, 518 (Ct. App. 2007).

[3] In California, "[a] landlord may be liable in negligence where, as a result of its failure to exercise reasonable care, the premises are uninhabitable and the tenant is injured as a result." *Martinez v. Optimus Props., LLC*, No. 216CV08598SVWMRW, 2017 WL 1040743, at *7 (C.D. Cal. Mar. 14, 2017) (citing *Stoiber v. Honeychuck*, 162 Cal. Rptr. 194, 203 (Ct. App. 1980)).

839 n.7 (9th Cir. 2001). To obtain either a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The elements of this test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

## II.   Analysis

Before addressing Plaintiff's arguments, the Court must determine whether it has the authority to grant the relief she seeks. The Court concludes it does not.

Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *See Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003); *see also Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983). *Rooker-Feldman* precludes jurisdiction when federal court proceedings arise out of a final state court determination that is "judicial in nature" and the issues raised are "inextricably intertwined" with the state court proceedings, making the federal case a de facto appeal of a state court decision. *See Feldman*, 460 U.S. at 476, 486; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring) (noting that a claim is inextricably intertwined "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it").

The *Rooker-Feldman* doctrine is narrow; it "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). But both conditions are present here. Plaintiff seeks to prevent "[t]he enforcement of the state court's judgment for possession" of the property at issue. Am. Compl. at 2. Plaintiff's Renewed TRO Motion thus "rel[ies] on the premise that

Plaintiff[] w[as] in fact entitled to remain in possession," meaning that the judgment in Defendant's favor was "wrongful." *Koshak v. Cnty. of Orange*, No. SACV 13-01732-CJC(ANX), 2014 WL 12626351, at *3 (C.D. Cal. Jan. 24, 2014), *aff'd*, 637 F. App'x 323 (9th Cir. 2016). And the issue of enforcing an unlawful detainer judgment is inextricably intertwined with the judgment itself. *See Barnes v. United Council of Hum. Servs.*, No. C 19-2848 SBA, 2019 WL 2270374, at *2 (N.D. Cal. May 28, 2019). So, "insofar as [she] requests that the Court 'stop' the eviction," Plaintiff is unavoidably "seeking relief from the state court judgment." *Richards v. Mercy Hous. Cal.*, No. C 12-00234 JW, 2012 WL 174186, at *2 (N.D. Cal. Jan. 18, 2012).

The *Rooker-Feldman* doctrine thus bars the Court from granting Plaintiff's Renewed TRO Motion. *See Busch v. Torres*, 905 F. Supp. 766, 771 (C.D. Cal. 1995) ("[P]laintiff's complaint . . . challenge[s] . . . the state court judgment in the unlawful detainer action and the subsequent enforcement of the judgment . . . . Under the *Rooker-Feldman* doctrine, this Court is precluded from reviewing that judgment and its execution."); *Pardo-Pena v. Spector*, No. 2:20-CV-03562-MAA, 2021 WL 6496732, at *11 (C.D. Cal. Nov. 3, 2021) ("To the extent that the [complaint] seeks to undo Plaintiff's eviction as a result of the judgment entered in the *Unlawful Detainer Action*, the *Rooker-Feldman* doctrine would deprive this Court of subject matter jurisdiction . . . ."); *Guancione v. Wachovia Mortg. Corp.*, No. 5:10-CV-03166 JF, 2010 WL 2991728, at *3 (N.D. Cal. July 28, 2010) (holding *Rooker-Feldman* precluded TRO where "the state court already ha[d] entered a judgment against [p]laintiffs, awarding [defendant] possession of the subject property").

## CONCLUSION

In light of the above, the Court:

1) **DISMISSES WITHOUT PREJUDICE** Plaintiff's Amended Complaint (ECF No. 5) for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2). The Court will, however, again **GRANT** Plaintiff leave to amend. Plaintiff may file a second amended complaint curing the pleading deficiencies noted above within <u>forty-five (45) days</u> of the date of this Order. The Court reminds Plaintiff

that any amended complaint must be complete in and of itself without reference to Plaintiff's original Complaint or Amended Complaint; claims not realleged in the second amended complaint will be considered waived. See S.D. Cal. CivLR 15.1; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012). **If Plaintiff fails to amend within the time provided, the Court will enter a final Order dismissing this civil action.** See *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005).

  2) **DENIES** Plaintiff's Renewed TRO Motion (ECF No. 6).

  **IT IS SO ORDERED.**

Dated: January 16, 2024

*[signature]*
Hon. Janis L. Sammartino
United States District Judge